UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SHAWN MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:12CV218 HEA |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's request for judicial review under 28 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI, 42 U.S.C. §1381, *et seq*. For the reasons set forth below, the Court affirms the Commissioner's denial of Plaintiff's application.

### **Facts and Background**

Plaintiff was 30 years old at the time of the hearing. He did not graduate from high school, nor had he obtained his GED, but was interested in doing so. The ALJ found Plaintiff had the severe impairments of: degenerative disc disease

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the cervical and lumbar spine, mild bilateral median neuropathy at wrists and ulnar nerve, recent right rotator cuff injury in March, 2011 with surgical repair in June, 2011 and depression.

At the September 2, 2011 hearing, Plaintiff testified that he dropped out of high school in ninth grade because his parents divorced and he went to work. Plaintiff is married, with three children, two who were 11 (presumably twins), and one 5 year old at the time of the hearing. Plaintiff had been a groundskeeper, a grocery stocker, a restaurant prep and table busser, and construction worker. Plaintiff was injured in a car accident and had to have fusion surgery at C5-6. In addition, Plaintiff's elbow was injured. Plaintiff testified that he has gotten worse since his denial of benefits in 2006 in that he has no strength at all. He testified he cannot lift a gallon of milk without using two hands. Plaintiff has pain in his neck and both sides of his shoulders, the pain goes down his arms and makes his legs tingle and throb. Plaintiff also testified that he can stand for 30 minutes at a time, which seems to relieve some of the pain in his back, can sit for 10 minutes before his back begins to hurt and has to lie down about an hour or two per day, three or four times a day. If lying down for 15 minutes, he would have to lie down five to six times per day.

Plaintiff testified that he sees a psychiatrist, for feelings of inadequacy and panic attacks. Plaintiff doesn't drive and he can only turn his head 45 degrees.

Plaintiff takes Hydrocodone for pain, pristis for depression, clonazepam for anxiety, seroquel to sleep. On a good day, Plaintiff can help his mother and sister, who come to help Plaintiff daily, by folding clothes.

A vocational expert also testified. The VE testified that Plaintiff, with the limitations of lifting ten pounds occasionally, standing and walking four hours in an eight hour work day, change positions every 30 minutes, no ladders, ropes or scaffolds, with balancing, kneeling, crouching, crawling, stooping, ramps and stairs limited to occasionally, could perform sedentary unskilled work, such as a hand packer job. The VE testified there are jobs in Missouri that satisfy these requirements.

Plaintiff's application for social security and supplemental security income benefits under Titles II, 42 U.S.C. §§ 401, *et seq.*, and XVI of the Act, 42 U.S.C. § 1381, *et seq.*, was denied on March 2, 2010. On January 26, 2012, the ALJ issued an unfavorable decision. On November 14, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

**Standard For Determining Disability**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled.

20 C.F.R. §§ 404.1520(a) (4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a) (1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the

claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id*.; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

## ALJ's Decision

Applying the foregoing five-step analysis, the ALJ in this case determined at Step One that Plaintiff had not engaged in substantial gainful activity since October 19, 2009, the application date. At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, mild bilateral median neuropathy at wrists and ulnar nerve, recent right rotator cuff injury in March, 2011 with surgical repair in June, 2011 and depression. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or equaled in severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

Prior to Step Four, the ALJ found that Plaintiff had the residual functional

capacity to perform a limited range of light work as defined in 20 CFR 416.967(a). Specifically, Plaintiff could lift, carry push, or pull 10 pounds occasionally, and less than 10 pounds frequently; stand or walk up to fur hours total in an 8 hour workday; sit four hours in an 8 hour work day. He would also require to change position between sitting and standing every 30 minutes. He would be unable to use ladders, ropes or scaffolds, occasionally balance, kneel, crouch, crawl, stoop and climb ramps or stairs. Plaintiff could not perform overhead work or tasks requiring turning the head from left to right and would be limited to performing simple routine tasks.

At Step Four, the ALJ determined that Plaintiff is unable to perform any past relevant work.

At Step Five, the ALJ considered Plaintiff's RFC, age, education, and work experience to determine that there are jobs that exist in the national economy that Plaintiff can perform.

**Standard For Judicial Review**

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th

Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Id*. However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id*. (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)). The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006).

## Discussion

In his appeal of the Commissioner's decision, Plaintiff makes the following

arguments: (1) The ALJ erred when he found Plaintiff did not meet listing 1.02(B)(2)(b), 1.05 and 1.08.  (2) The ALJ erred in failing to consider Plaintiff's pain as significant non-exertional limitation and therefore his evaluation of Plaintiff's RFC was deficient.

**Listings 1.02(B)(2)(b), 1.05 and 1.08**

"The claimant has the burden of proving that his impairment meets or equals a listing," *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir.2010); and, " '[t]o meet a listing, an impairment must meet all of the listing's specified criteria,'" *id*. (quoting *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir.2004)).

Listing 1.02 states, in relevant part,

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (I .e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.02.

Although Plaintiff argues that he meets Listing "1.02(B)(2)(b)," no such section exists. Plaintiff appears to be relying instead on listing 1.02(B). Listing 1.02(B) requires that plaintiff demonstrate an inability to perform fine and gross movements effectively. There is no evidence of difficulty in Plaintiff's ability to perform fine and gross movements. Thus, Plaintiff's argument that the ALJ erred in finding he did not meet Listing 1.02(B) lacks merit.

Plaintiff next argues that he meets Listing 1.05. Listing 1.05 concerns amputation. See 20 C.F.R. Part 404, Subpart P, App. 1, § 1.05. This issue is not relevant to this case. Thus, the ALJ properly found that plaintiff did not meet Listing 1.05.

Plaintiff finally argues that he meets Listing 1.08. To meet Listing 1.08, a claimant must have "[s]oft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head." See 20 C.F.R. Part 404, Subpart P, App. 1, § 1.08. There is no evidence in the record of soft tissue injury. Thus, the ALJ properly found that plaintiff did not meet Listing 1.08.

In this case, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. The ALJ specifically considered Listing 1.04, disorders of the spine, which was appropriate due to Plaintiff's severe spinal impairments. The ALJ found that

Plaintiff did not meet this listing because the medical evidence did not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under this listing. There was no evidence that Plaintiff's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b).

In consideration of Listing 11.01 the ALJ found that the record failed to establish significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station or significant interference with speech, vision, mental function or daily activities.

In consideration of Listing 11.14, the ALJ found that the record failed to demonstrate any significant and persistent disorganization of motor function in two extremities that have resulted in sustained disturbance of gross and dexterous movements or gait and station.

The ALJ also considered Plaintiff's mental impairment and found it did not meet or medically equal the criteria of listing 12.04. Plaintiff only had mild restrictions in activities of daily living. He is able to attend to his personal needs independently, he is able to live with his wife and children, and his actions are appropriate and effective in manner. He only has mild difficulties in social functioning. He has been married for 13 years, has three children, he goes to the doctor when necessary. Regarding concentration, persistence or pace, the ALJ

found that Plaintiff has moderate difficulties. During the hearing, Plaintiff did not demonstrate or manifest any difficulty concentrating. He was able to process questions without difficulty, and responded appropriately. He paid attention. While the ALJ found that the record established that Plaintiff had some difficulties with concentration, he would be able to perform simple routine tasks.

The Plaintiff has had no periods of decompensation. Since Plaintiff's mental impairment failed to satisfy at least two "marked" limitations, or one "marked" limitation with repeated episodes of decompensation, each one of extended duration, he did not meet Paragraph B criteria. The ALJ also analyzed whether Plaintiff met Paragraph C, and found that the evidence failed to establish the presence of the necessary criteria.

**Residual Functional Capacity**

Plaintiff next argues that the ALJ failed to consider Plaintiff's pain as a significant non-exertional limitation. Plaintiff contends that the ALJ's determination that Plaintiff retained the RFC for light work is not supported by substantial evidence.

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue,* 596 F.3d 959,

969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ made the following determination with regard to Plaintiff's RFC: perform a limited range of light work as defined in 20 CFR 416.967(a). Specifically, Plaintiff could lift, carry push, or pull 10 pounds occasionally, and

less than 10 pounds frequently; stand or walk up to fur hours total in an 8 hour workday; sit four hours in an 8 hour work day. He would also require to change position between sitting and standing every 30 minutes. He would be unable to use ladders, ropes or scaffolds, occasionally balance, kneel, crouch, crawl, stoop and climb ramps or stairs. Plaintiff could no perform overhead work or tasks requiring turning the head from left to right and would be limited to performing simple routine tasks.

As stated above, Plaintiff contends that the ALJ's determination that Plaintiff retained the RFC for light work is not supported by substantial evidence.

In determining Plaintiff's RFC, the ALJ first assessed the credibility of Plaintiff's subjective complaints of pain and limitations under *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). Polaski requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. 739 F.2d at 1322.

The ALJ noted that the objective medical evidence did not support Plaintiff's allegations of disability. Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. See *Curran–Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir.2003).

The ALJ discussed Plaintiff's medical records *vis a vis* Plaintiff's complaints of disabling pain. The MRI of Plaintiff's lumbar spine in December, 2006 showed some **mild** annular bulges. The MRI of his lumbar spine in October 2009 was negative for any abnormality. Another MRI in August, 2009 showed all findings within normal limits. Plaintiff's cervical spine X-rays in December 2008 the previous fusion at C5-6 in good position and a straightening of overall alignment suggested associated muscular spasm. X-rays of the cervical spine from December 2009 showed anterior fusion at C5-6, but, otherwise preserved vertebral body heights, disc spaces, intra vertebral foramen and alignment.

Plaintiff's doctors reported some tenderness and some limited range of motion, but no major problems.

Plaintiff has never been prescribed an assistance device; he has been treated primarily with medications for pain management, which has provided Plaintiff relief for pain. Indeed, Dr. Haiderzad diagnosed Plaintiff with "prescription pain medication abuse," establishing that Plaintiff did not comply with the prescribed manner of taking his pain medication. Evidence of effective medication resulting in relief may diminish the credibility of a claimant's complaints. See *Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir.1999).

The ALJ concluded that Plaintiff's post fusion surgery is not disabling. (Tr. 16). The ALJ stated that Plaintiff does not require an assistive device, and additional surgery and physical therapy have not been recommended. The medical

evidence cited by the ALJ supports these findings.

The ALJ considered the finding of non-disability made by State agency mental medical consultants pursuant to Ruling 96-6p. Dr. Spence determined that Plaintiff's mental impairments were not severe. Plaintiff also takes his prescribed mental health medications as prescribed. No treating physician has determined that Plaintiff has any mental limitations. The presence or absence of functional limitations is an appropriate *Polaski* factor, and "[t]he lack of physical restrictions militates against a finding of total disability." *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir.1999) (citing *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir.1993)).

An administrative opinion must establish that the ALJ considered the appropriate factors. See *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001). However, each and every *Polaski* factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir.2001). In this case, the reasons given above by the ALJ for discrediting Plaintiff's complaints of disabling pain are sufficient and his finding that Plaintiff's complaints are not entirely credible is supported by substantial evidence.

The ALJ's RFC determination is supported by the record as a whole. The medical evidence discussed above reveals that Plaintiff's back pain improved with medication. The ALJ acknowledged that Plaintiff experienced some pain due to his back impairment and found he was capable of only a limited range of light

work. The ALJ included a sit/stand option, which is consistent with Plaintiff's testimony that he has to stand to relieve the pressure.  The ALJ also credited Plaintiff's testimony that he experienced difficulty with concentration and being around people, in limiting him to simple routine tasks.  The record does not support the presence of any greater limitations than those found by the ALJ. The vocational expert testified that an individual with the RFC found by the ALJ was capable of performing other work existing in significant numbers in the national economy.

The ALJ's RFC finding is clearly based upon the record as a whole.  The ALJ summarized Plaintiff's testimony regarding his limitations, the treatment notes regarding his impairments, the medical opinions in the record, Plaintiff's representations in his disability report, and the ALJ's credibility findings.  The ALJ applied the proper standard to the facts before him and his determination of Plaintiff's RFC is supported by the record as a whole.

## Conclusion

After careful examination of the record, the Court finds the Commissioner's determination is supported by substantial evidence on the record as a whole, and therefore, the decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 7th day of February, 2014.

_____
   HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE